IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Loretta Diaz, ) | Case No. 4:23-cv-00045-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Waffle House, Inc.; WH Capital, LLC, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on Defendants' motion for summary judgment and motion to exclude expert testimony. [Docs. 30; 31.] The motions have been fully briefed [Docs. 32–38] and are ripe for consideration. For the reasons discussed, the motion for summary judgment is granted in part and denied in part, and the motion to exclude expert testimony is denied.

**BACKGROUND**[1]

In ruling on a motion for summary judgment, this Court views the facts and reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). Viewed in the light most favorable to Plaintiff, the summary judgment record reveals the following facts.

This is a premises liability slip and fall case in which Plaintiff alleges she slipped and fell in the restroom of Waffle House Unit #1397 in Dillon, South Carolina (the "Dillon

---

[1] Pursuant to the undersigned's Rule 56 Summary Judgment Motion Procedures, the parties submitted a joint statement of undisputed material facts [Doc. 32], an opponent's statement of material facts [Doc. 35], and a reply statement of material facts [Doc. 37]. The Court will cite to these documents for the relevant background included herein.

Waffle House"). [Doc. 32 ¶ 1.] On January 3, 2020, Plaintiff and her husband entered the Dillon Waffle House, and Plaintiff went into the ladies' restroom to wash her hands. [*Id.* ¶¶ 3–4.] While in the restroom, she had no difficulties walking across the floor and saw no foreign substance on the floor. [*Id.* ¶ 5.] Plaintiff left the restroom and joined her husband in a booth at the opposite corner of the restaurant from the restrooms. [*Id.* ¶ 6.]

About eight minutes later, Plaintiff got up from the booth and walked back to the restroom. [*Id.* ¶ 7.] Plaintiff had been the last occupant of the ladies' restroom, as no one else had entered the restroom since Plaintiff had previously gone in to wash her hands. [*Id.* ¶ 8.] While in the restroom this second time, Plaintiff slipped and fell on a liquid foreign substance that was on the tile floor of the ladies' restroom in the Dillon Waffle House.[2] [Doc. 35 at 2 ¶¶ 3–4.] Plaintiff then hollered, and her husband heard her and walked over to her. [*Id.* at 2 ¶ 6, 3 ¶ 8; Docs. 37 ¶¶ 6, 8; 35-6 at 13–14 (13:15–14:7).]

---

[2] Defendants dispute that Plaintiff slipped and fell on the restroom floor and contend that the slip and fall was staged by Plaintiff and her husband. [Doc. 37 ¶¶ 3–4; *see also* Doc. 30-1 at 9–12.] However, as stated, the Court must view the facts and reasonable inferences in the light most favorable to Plaintiff as the nonmoving party. *Scott*, 550 U.S. at 378. Although Defendants argue that the video evidence in this case demonstrates that no reasonable juror could conclude that Plaintiff sustained a slip and fall in the ladies' restroom [Doc. 30-1 at 9–12; *see also* Doc. 36 at 1–5], the Fourth Circuit Court of Appeals "has repeatedly cautioned against misuse of *Scott*'s narrow exception," which provides that a court "may discount a plaintiff's first-hand account *only* [1] when there is evidence . . . of undisputed authenticity that [2] shows some material element of the plaintiff's account to be *blatantly and demonstrably* false [3] such that no reasonable jury could credit the plaintiff's version of events," *Alexander v. Connor*, 105 F.4th 174, 179 (4th Cir. 2024) (alterations in original) (internal quotation marks omitted). The Court has been unable to view the CCTV video footage the parties submitted; however, a review of the still photographs submitted along with Defendants' description of the inconsistencies between the video footage and Plaintiff's testimony fails to show that some *material element* of Plaintiff's account is blatantly and demonstrably false; the alleged slip and fall occurred in the ladies' restroom, which is not shown in the video footage. [*See* Doc. 30-3 ¶ 2 (averring that the video footage shows "Plaintiff and her husband before and after the incident that allegedly occurred in the ladies restroom").]

2

Plaintiff filed this action in the Dillon County Court of Common Pleas on December 5, 2022, and Defendants removed it to this Court on January 5, 2023. [Docs. 1; 1-1.] The Complaint asserts a single cause of action for negligence [Doc. 1-1 at 7–11 ¶¶ 34–40], and Plaintiff seeks actual and punitive damages and costs [*id.* at 11].

## APPLICABLE LAW

**Expert Witness Testimony**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony.[3] It provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Accordingly, Rule 702 requires a court to conduct a two-part analysis: first, the court must determine whether an expert is qualified to offer an opinion on the

---

[3] Although Rule 702 governs trial testimony, "[a] trial court has discretion to conduct the reliability and helpfulness analysis that *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)] and Rule 702 require in the context of a summary judgment motion, and to exclude expert testimony found wanting from its consideration in ruling on the motion." *Arsanjani v. United States*, No. 19-1746 (JEB), 2023 WL 3231101, at *3 (D.D.C. May 3, 2023) (alteration in original) (internal quotation marks omitted). The Court will thus weigh the Rule 702 factors in ruling on the pending motion to exclude.

3

subject matter at issue by virtue of "knowledge, skill, experience, training, or education"; second, the court must determine whether the particular opinion offered satisfies the four requirements in subsections (a) through (d) of Rule 702.

"Implicit in the text of Rule 702 . . . is a district court's gatekeeping responsibility to 'ensur[e] that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597). To conduct this gatekeeping function, a court must perform "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. *Daubert* offers "several guidepost factors that the court *may* consider in assessing an expert's evidentiary reliability," including "whether a theory or technique can be (and has been) tested; whether the theory or technique has been subjected to peer review and publication; whether a given technique has a high known or potential rate of error and whether there are standards controlling the technique's operation; and whether the theory or technique enjoys general acceptance within a relevant scientific community." *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 959 (4th Cir. 2020) (alterations and internal quotation marks omitted). The Supreme Court's "emphasis on the word 'may' . . . reflects *Daubert's* description of the Rule 702 inquiry as 'a flexible one.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quoting *Daubert*, 509 U.S. at 594). The party offering the expert opinion evidence bears the burden of establishing its admissibility by a preponderance of proof. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id*. at 322. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits. Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 256.

## DISCUSSION

**Motion to Exclude**

The Court begins by addressing Defendants' motion to exclude expert testimony, as it seeks to exclude the testimony of Bryan Durig, Ph.D., P.E., Plaintiff's expert witness, in this litigation, including in the Court's analysis of Defendants' motion for summary judgment. In his report, Dr. Durig explained that he examined and tested the tile flooring in the ladies' restroom of the Dillon Waffle House and that it failed to meet the minimum

6

wet dynamic coefficient of friction[4] required by industry standards to be considered slip resistant; thus, he opined that the flooring did not meet building codes or industry standards for a slip-resistant walking surface. [*See generally* Doc. 35-3.] In their motion to exclude, Defendants argue that the Dr. Durig's testimony should be excluded or otherwise limited such that he may not offer testimony that the floor in the ladies' restroom at the Dillon Waffle House was not sufficiently slip resistant when wet or that Defendants had a duty to take action to increase or enhance the slip resistance of the floor. [*See generally* Doc. 31-1.]

Defendants do not challenge Dr. Durig's qualifications as an expert witness. Instead, Defendants contend that Dr. Durig's testimony is irrelevant, immaterial, and unreliable under controlling South Carolina law because he tested the coefficient of friction of the restroom tiles only when they were wet rather than both when they were wet and when they were dry. [*Id.* at 3–5.] They also argue that Dr. Durig's opinion is unreliable because he was unfamiliar with Plaintiff's deposition testimony, believed that the foreign substance Plaintiff slipped on was Coke rather than water, and did not know where in the ladies' restroom Plaintiff slipped and fell. [*Id.* at 5.] Finally, Defendants assert that Dr. Durig's testing used a soap solution rather than water, that he presented no evidence to establish that the methodology used was peer-reviewed and scientifically approved, that he showed a lack of understanding regarding the tests and significance of the result numbers, and that he used a standard promulgated in 2022 for an accident that occurred in January 2020. [*Id.* at 5–6.] Plaintiff, on the other hand, contends that Dr.

---

[4] Dr. Durig testified generally that the dynamic coefficient of friction is the amount of force necessary to keep an object moving on the ground. [Doc. 33-6 at 24–25 (24:4–25:8).]

7

Durig's opinion is relevant and reliable in that his methodology to test for the coefficient of friction of flooring when wet is based on scientific knowledge and skill, that his testimony is sufficiently tied to the facts of the case to assist the jury, that his reading of Plaintiff's deposition testimony was unnecessary to reach his expert opinion, and that his use of the 2022 standard is immaterial because the flooring failed under both the 2012 and 2022 standards.  [Doc. 33 at 6–14.]

Defendants contend that Dr. Durig should have tested the tiles both when they were wet and when they were dry because the Supreme Court of South Carolina held in *Olson v. Faculty House of Carolina, Inc.*, 580 S.E.2d 440 (S.C. 2003) ("*Olson I*"), that merchants have no duty to ensure a higher degree of slip resistance when wet than when dry or to take steps to increase or enhance the slip resistance of the floor.  [Doc. 31-1 at 3–5.]  The Court concludes that Defendants' argument regarding the unreliability of Dr. Durig's opinion in this regard is misplaced.  In *Olson I*, the court analyzed "whether, by virtue of the [Construction of Public Buildings for Access by Persons with Disabilities] Act [(the "Act")], [the defendant dining club] had a duty, solely with respect to its disabled patrons, to ensure that its floor[s] were more slip resistant, in the presence of a foreign substance, than required by common law."  *Olson I*, 580 S.E.2d at 442 (emphasis omitted).  Notably, in *Olson I*, the supreme court evaluated the duty owed to a specific class of patrons under the Act, not the duty owed to all patrons under a common law negligence claim.[5]  In reaching its decision that the Act did not create a higher duty of

---

[5] Indeed, as the *Olson I* court noted, the trial court denied summary judgment on the common law negligence claim asserted in that case, the court of appeals affirmed, and the claim remained pending when *Olson I* was decided.  *Olson I*, 580 S.E.2d at 441 & n.3.

8

care than that required by common law, the court noted that nothing in the Act "requires, in foreign substance cases, a merchant's floors to have a higher degree of 'slip-resistance' when wet than when dry." *Id.* at 443. However, as noted by the Court of Appeals of South Carolina in the case below, at that time the American National Standards Institute ("ANSI") guidelines merely required that floors have a "nonslip surface," a generally accepted method to evaluate the slip resistance of walking surfaces for all use conditions had not yet been established, and none of the ANSI guidelines "include[d] a recommended coefficient of friction." *Olson v. Faculty House of Carolina, Inc.*, 544 S.E.2d 38, 43 (S.C. Ct. App. 2001) ("*Olson II*"); *see also Olson I*, 580 S.E.2d at 442 n.5. Moreover, the court of appeals concluded that no evidence was presented to show that the defendant had violated any ANSI standard or any other applicable standard regarding floor surfaces. *Olson II*, 544 S.E.2d at 43. Indeed, even though coefficient of friction standards existed under federal statutes at that time, there was no consensus as to whether the standards applied to wet or dry floors. *Id.*

Since *Olson I*, the National Floor Safety Institute ("NFSI") was designated as the standards developer for the ANSI in June 2006 to develop standards for safety requirements for slip, trip, and fall prevention, and ANSI approved the first NFSI standard in October 2009. [*See* Doc. 34-5 at 1.] Dr. Durig tested for the wet dynamic coefficient of friction of three flooring tiles in the ladies' restroom of the Dillon Waffle House in accordance with the ANSI/NFSI B101.3 industry standard. [Doc. 35-3 at 5; *see generally* Doc. 33-5.] Dr. Durig testified that he tested the wet dynamic coefficient of friction and did not test the floor in a dry condition because Plaintiff had stated she slipped on a *liquid* foreign substance. [Doc. 33-6 at 25–26 (25:21–26:20).]

The Court concludes that Dr. Durig's opinion is based on a reliable methodology. Indeed, most of the issues Defendants raise to challenge Dr. Durig's opinion and testimony are fodder for cross examination and do not render Dr. Durig's opinion unreliable.  *See Paul L. Kennedy Enters. v. Manganaro Se., LLC*, No. 21cv01223, 2023 WL 2542110 (D.S.C. Jan. 31, 2023) (refusing to exclude expert testimony on the basis of the expert's methodology because such arguments were "merely fodder for cross examination, not a basis to exclude [the expert's] opinion" and "go to the weight of [the expert's] opinion, not the admissibility"); *see also Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017) ("[Q]uestions regarding the factual underpinnings of the expert witness' opinion affect the weight and credibility of the witness' assessment, not its admissibility." (cleaned up)); *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017) ("Where, as here, the experts' opinions are not the junk science Rule 702 was meant to exclude, the interests of justice favor leaving the difficult issues in the hands of the jury and relying on the safeguards of the adversary system—vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof—to attack shaky but admissible evidence." (cleaned up)).  Dr. Durig's testimony should "be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). Accordingly, the Court denies Defendants' motion to exclude expert testimony.

**Motion for Summary Judgment**

The parties have addressed Plaintiff's negligence cause of action as raising four distinct negligence claims—a slip-resistant floor claim; a traditional slip and fall foreign substance claim; a failure to warn claim; and a negligent hiring, retention, training, and

10

supervision claim. [*See generally* Docs. 30-1; 33; 36.] The Court will address these distinct claims seriatim but begins by addressing Defendants' argument that Defendant WH Capital, LLC, should be dismissed.

### *Defendant WH Capital, LLC*

As an initial matter, the parties have stipulated that "Waffle House, Inc. is the correct Defendant" because "WH Capital, LLC owns the real property and did not operate the restaurant." [Doc. 32 ¶ 2.] Accordingly, Defendants' motion for summary judgment is granted as to WH Capital, LLC, and the Court addresses the merits of Plaintiff's claims against Defendant Waffle House, Inc.

### *Slip-Resistant Floor Claim*

Relying on *Olson I*, Defendants contend they are entitled to summary judgment on Plaintiff's slip-resistant floor claim because "the failure by [Plaintiff] to test the coefficient of friction when dry is fatal" to this claim. [Doc. 30-1 at 7.] Defendants argue that "without knowing the dry coefficient of friction of the tiles in the [Dillon] Waffle House restroom, [Plaintiff] cannot support her theory of liability that the floor was not sufficiently slip-resistant." [*Id.* at 8.] They further argue that the common law test for foreign substances has not been abrogated and that South Carolina courts do not require "'storekeepers to take actions to prevent or minimize the foreseeable risk of a foreign substance on the floor of [their] premises.'" [*Id.* (quoting *Wintersteen v. Food Lion, Inc.*, 542 S.E.2d 728 (S.C. 2001)).]

Defendants' arguments conflate what the Court views as two separate claims—one asserting negligence in the selection and/or maintenance of the flooring in the restroom such that it failed to comply with industry standards regarding slip resistance

11

and the other asserting negligence based on a foreign substance on the floor. *Cf. Williams v. Perdue Farms, Inc.*, No. 4:18-cv-02387-RBH, 2020 WL 564715, at *5 (D.S.C. Feb. 5, 2020) ("By making these arguments, Plaintiff essentially tries to transform this case from a slip-and-fall caused by a *foreign substance* on the floor (i.e., chicken fat) to a slip-and-fall caused by a *dangerous condition created* by Perdue (i.e., allowing ingress/egress through the Rehang Doors that lacked a warning sign or notice). South Carolina premises liability law differentiates between these types of slip-and-falls." (footnote omitted)); *Force v. Richland Mem. Hosp.*, 471 S.E.2d 714, 715 (S.C. Ct. App. 1996) (recognizing that slip and fall cases are distinguishable from dangerous conditions cases and that, in slip and fall cases, "the floor is generally considered safe, absent a foreign substance which renders it unsafe"); *Howard v. K-Mart Disc. Stores*, 359 S.E.2d 81, 82 (S.C. Ct. App. 1987) (recognizing that "[t]he evidence necessary to show a merchant's negligence for slippery wax or finish on a floor differs from the showing necessary where the presence of foreign substances is alleged" and that, concerning the former, a "plaintiff must show the owner was negligent in the materials used to wax the floor or in the manner of application"). Although in this case Plaintiff alleges a foreign substance was on the floor when she fell, she also alleges that the floor itself was unsafe. [Doc. 1-1 at 8 ¶ 37(n) (alleging that Defendants had a duty "[t]o ensure [their] restroom floors maintain[ed] a reasonable coefficient of friction").]

To establish a cause of action for negligence in South Carolina,[6] a plaintiff "must prove the following four elements: (1) a duty of care owed by defendant to plaintiff;

---

[6] "When sitting in diversity, a federal court must apply the law of the forum state as it is interpreted by the state's highest court." *Moore v. Equitrans, L.P.*, 27 F.4th 211, 220 (4th Cir. 2022) (internal quotation marks omitted).

12

(2) breach of that duty by a negligent act or omission; (3) resulting in damages to the plaintiff; and (4) damages proximately resulted from the breach of duty." *Thomasko v. Poole*, 561 S.E.2d 597, 599 (S.C. 2002). Defendants contend, relying on *Olson I*, that they did not have a duty to take steps to increase the slip resistance of the floor when wet. [Doc. 30-1 at 8.] However, as explained above, the *Olson I* court evaluated the duty owed to a specific class of patrons under the Act, not the duty owed to all patrons under a common law negligence claim. Accordingly, *Olson I* is inapplicable to Plaintiff's claim asserting negligence in the selection and/or maintenance of the restroom flooring such that it failed to comply with industry standards related to the coefficient of friction of the tile.

In South Carolina, although "a merchant is not an insurer of the safety of [its] customers," it does owe its customers "the duty to exercise ordinary care to keep [the] premises in a reasonably safe condition." *Howard,* 359 S.E.2d at 82. Here, Plaintiff's expert has opined that "the tile flooring failed to meet the minimum wet [dynamic coefficient of friction] required by NFSI B101.3 to be considered slip-resistant, [and] therefore, the flooring does not meet building codes or industry standards for a slip-resistant walking surface." [Doc. 35-3 at 7.] Based on this evidence, a reasonable jury could conclude that Waffle House, Inc. breached its duty to keep the premises in a reasonably safe condition. *See Elledge v. Richland/Lexington Sch. Dist. Five*, 573 S.E.2d 789, 793 (S.C. 2002) ("[T]he general rule is that evidence of industry safety standards is relevant to establishing the standard of care in a negligence case.") Accordingly, the Court concludes that a genuine issue of material fact exists with respect to Plaintiff's slip-

13

resistant floor claim, and Defendants' motion for summary judgment is denied as to this claim.

### *Foreign Substance Claim*

Defendants argue Plaintiff's foreign substance claim fails because "[t]here is no evidence that [Defendants] created any defective condition" or "had actual or constructive knowledge of any water on the restroom floor and failed to remedy it." [Doc. 30-1 at 9.] The Court agrees.

"In the case of a foreign substance, the plaintiff must demonstrate either that the substance was placed there by the defendant or its agents, or that the defendant had actual or constructive notice the substance was on the floor at the time of the slip and fall." *Wintersteen*, 542 S.E.2d at 729–30. Here, Plaintiff does not contend that Waffle House, Inc. placed the foreign substance on the ladies' restroom floor or that it had actual notice of the substance, but she argues that she "has presented sufficient evidence to create a question of fact as to [Waffle House, Inc.'s] constructive knowledge of the liquid on the restroom floor." [Doc. 34 at 13.] A plaintiff "can establish the storekeeper's constructive knowledge of the dangerous condition by showing that the foreign substance had been on the floor for a sufficient length of time that the storekeeper would or should have discovered and removed it had the storekeeper used ordinary care." *Gillespie v. Wal-Mart Stores, Inc.*, 394 S.E.2d 24, 24–25 (S.C. Ct. App. 1990). Here, though, Plaintiff concedes that even she saw no liquid substance on the floor the first time she used the restroom, and no one else had entered the ladies' restroom between the time she first used it and when she slipped and fell during her second visit approximately eight minutes later. [Doc. 32 ¶¶ 5, 7, 8.] Additionally, Plaintiff testified that she did not know how long

the liquid had been on the floor.  [Doc. 30-4 at 20 (38:10–12).]  Nor does she offer any other evidence to establish how long the liquid had been on the floor.  Accordingly, the Court concludes that Plaintiff has failed to show a genuine dispute of material fact as to whether Waffle House, Inc. had constructive knowledge that liquid was on the restroom floor.  *See Graham v. Wal-Mart Stores E., L.P.*, No. 6:23-04523-HMH, 2024 WL 3238046, at *4 (D.S.C. June 28, 2024) (concluding that a plaintiff failed to raise a genuine dispute of material fact that the defendant had constructive knowledge of liquid on the floor where "determining that the liquid had been on the floor for over an hour – as opposed to a few minutes – would require a jury to engage in impermissible speculation"), *appeal dismissed*, No. 24-1701, 2024 WL 5347222 (4th Cir. Nov. 12, 2024); *Nolan v. Seawatch Plantation Master Ass'n, Inc.*, No. 4:10-cv-00501-RBH, 2011 WL 5878137, at *3 (D.S.C. Nov. 23, 2011) ("Because there is simply no evidence in the record to establish how long the water had been on the floor prior to [one plaintiff's] fall, [the plaintiffs] have failed to meet their legal burden of showing that the water had been on the floor for a sufficient length of time such that the storekeeper would or should have discovered and removed it had the storekeeper used ordinary care." (cleaned up)).  Therefore, Defendants' motion for summary judgment is granted as to the foreign substance claim.

### *Failure to Warn Claim*

Defendants argue they are entitled to summary judgment on Plaintiff's failure to warn claim because "there is no evidence to support any duty to warn [Plaintiff] regarding the presence of the water on the floor in the ladies' restroom."  [Doc. 30-1 at 13.]  The Court agrees.

15

Under South Carolina law, a "landowner has a duty to warn an invitee only of latent or hidden dangers of which the landowner has knowledge or should have knowledge." *Larimore v. Carolina Power & Light*, 531 S.E.2d 535, 538 (S.C. Ct. App. 2000). Here, as stated above, Plaintiff has produced no evidence showing that Waffle House, Inc. had any knowledge of the liquid on the restroom floor. Nor has she shown that it should have had such knowledge, especially given that she herself did not see any liquid on the floor during either of her two visits to the restroom before she allegedly fell. Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's failure to warn claim. *See id.* at 540 ("The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries. If that superior knowledge is lacking, . . . the invitor cannot be held liable." (internal quotation marks omitted)).

### *Negligent Hiring, Retention, Training, and Supervision Claim*

Defendants argue they are entitled to summary judgment on Plaintiff's claim for negligent hiring, retention, training, and supervision because Plaintiff has failed to present any evidence that any of "Defendants' employees had the propensity for wrongdoing or had engaged in such a similar course of conduct in the past sufficient to have put [Defendants] on notice of possible harm to third parties." [Doc. 30-1 at 15.] The Court agrees.

The Supreme Court of South Carolina has explained that "[i]n circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself negligent in hiring, supervising, or training the employee, or that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of

16

harm to the public." *James v. Kelly Trucking Co.*, 661 S.E.2d 329, 330 (S.C. 2008). "Negligent hiring cases generally turn on two fundamental elements—knowledge of the employer and foreseeability of harm to third parties." *Kase v. Ebert*, 707 S.E.2d 456, 459 (S.C. Ct. App. 2011) (internal quotation marks omitted). Similarly, an employer may be liable for negligent supervision when its employee "(1) is upon the premises of the employer, or is using a chattel of the employer, (2) the employer knows or has reason to know that he has the ability to control his employee, and (3) the employer knows or should know of the necessity and opportunity for exercising such control." *Moore by Moore v. Berkeley Cnty. Sch. Dist.*, 486 S.E.2d 9, 12 (S.C. Ct. App. 1997). Courts may decide these claims on dispositive motions "when no reasonable factfinder could find the risk foreseeable or the employer's conduct to have fallen below the acceptable standard." *Doe v. ATC, Inc.*, 624 S.E.2d 447, 450 (S.C. Ct. App. 2005).

Here, Plaintiff has failed to direct the Court to any evidence that Waffle House, Inc. knew or should have known that any of its employees had previously engaged in wrongful conduct that created an unreasonable risk of harm to third parties such that it could be liable for negligent hiring, retention, training, or supervision. Accordingly, Defendants' motion for summary judgment is granted as to that claim.[7]

---

[7] Plaintiff appears to argue that her evidence of the foreign substance on the floor at the time of her fall is sufficient to create a genuine issue of material fact regarding a claim for negligent training or supervision. [*See* Doc. 34 at 19 (Plaintiff's response in opposition, asserting that she has shown Waffle House, Inc. breached its duty to train and supervise employees because a manager testified that she had shown other employees how to clean the restrooms but, nonetheless, an employee stated that the floor was "nasty and kind of gross" after Plaintiff fell (internal quotation marks omitted)).] South Carolina law provides that "negligent training is merely a specific negligent supervision theory by another name." *Holcombe v. Helena Chem. Co.*, 238 F. Supp. 3d 767, 772 (D.S.C. 2017); *see also Gainey v. Kingston Plantation*, No. 4:06-3373-RBH, 2008 WL 706916, at *7 n. 4 (D.S.C. Mar. 14, 2008) ("It does not appear that South Carolina recognizes a claim for

**CONCLUSION**

Wherefore, based on the foregoing, Defendants' motion to exclude expert testimony [Doc. 31] is DENIED, and Defendants' motion for summary judgment [Doc. 30] is GRANTED IN PART and DENIED IN PART. The motion is granted as to Defendant WH Capital, LLC and as to all claims against Defendant Waffle House, Inc. except Plaintiff's negligence claim based on the slip resistance of the floor.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

January 9, 2026
Greenville, South Carolina

---

negligent training separate and apart from one for negligent supervision."). "Whether the claim is simply one of a negligent failure to supervise or instead involves improper training, the key question is whether the employer knew or should have known of the danger the employee posed to others." *Holcombe*, 238 F.Supp.3d at 773.